The town of WOLCOTT *against* POND and others :

19  597
73  505

### IN ERROR.

IN construing a remedial statute, which has for its end the promotion of important and beneficial public objects, a large construction is to be given, when it can be done without doing actual violence to its terms.

The phrase *laying out*, as used in the statute relating to highways, includes not only the initiatory act of laying out the road by the select-men, but also the acceptance of the survey by the town, and the recording thereof.

Therefore, where several persons in the town of *W.* brought their petition to the county court for a highway, averring therein, that the select-men had neglected and refused to lay out the same, and cited the town to appear; and the respondents appeared, and filed their answer, that the select-men had not neglected and refused to lay out the road, but that the select-men had proceeded, before the date of the petition, to lay out the same, and had made a survey thereof in writing, which survey they had presented to a legal meeting of the town, and the town voted not to accept the same, and that no further proceedings had ever taken place in relation thereto since that time; it was held, that the answer to the petition was insufficient, and that the county court had jurisdiction of the case.

The period of twelve months, until the expiration of which a highway, after having been laid out, shall not be laid open or occupied, (*Stat.* p. 340. ed. 1838,) must be intended to commence from the time when the way shall have been legally established, by the combined measures of the select-men and the town.

THIS was a petition for a highway lying wholly in the town of *Wolcott;* brought to the county court, *November* term, 1847, by *Moses Pond* and others, against that town.

It was averred in the petition, that common convenience and necessity required, that the highway should be laid out and constructed; that the petitioners had frequently requested the select-men to lay out and construct the same; and that they had, at all times, neglected and refused so to do.

The respondents having been cited to appear, filed their answer to the petition, stating that it was not true, that the select-men had at any time neglected or refused to lay out or construct the proposed highway; that before the date of the petition, to wit, on the *1st* day of *September*, 1846, the select-men of *Wolcott* did proceed to lay out the highway, first giving the notice required by the statute; that the select-men further made a survey thereof in writing, proceeding in all respects according to the provisions of the statute; that on the *5th* day of *October*, 1846, they laid their survey, in the form of a report, before the town of *Wolcott*, in legal meeting convened, and the town then and there voted not to accept the same; and that no further proceedings had ever taken place in regard to the highway.

To this answer, the petitioners demurred; and the court adjudged it insufficient; and it was thereupon ordered, that the petition should be referred to the county commissioners, according to the provisions of the act of *June 23d*, 1847.

The commissioners, after a hearing of the parties, proceeded to lay out the road, and made report thereof to the court, the next term; which report the court accepted, and the usual orders were made.

The respondents thereupon brought a writ of error to the superior court, assigning for cause of error, that the county court mistook the law, in adjudging their answer to the petition insufficient; and the judgment of the county court was affirmed. By motion in error, the respondents then brought the case before this court for revision.

*Kimberly* and *Beach*, (with whom was *Webster*,) for the plaintiffs in error, contended, 1. That, in order to give jurisdiction to the county court, it is indispensable that the select-men should have neglected and refused to *lay out* the road;

and it must be so averred and proved. *Waterbury* & al. v. *Darien*, 8 *Conn. R.* 163. 9 *Conn. R.* 252. *Plainfield* v. *Packer* & al. 11 *Conn. R.* 581. *Southington* v. *Clark*, & al. 13 *Conn. R.* 373. It is not sufficient to aver that the town has neglected to lay out the road. *Torrington* v. *Nash* & al. 17 *Conn. R.* 199. It is not sufficient to aver and prove, that the town has neglected and refused to do something, which is necessary to be done before opening the road. Nor is it enough to aver, that the select-men have neglected any other act or duty, than that of laying out the road ; as, for instance, the working or constructing of the same. *Treat* & al. v. *Middletown*, 8 *Conn. R.* 245.

2. That by the 11th section of the statute relating to highways and bridges, (*Stat. tit.* 49, *p.* 339, ed. 1838,) the select-men are authorized to lay out all necessary highways within their respective towns ; and in the exercise of their authority under this act, our courts hold, that they do not act as the agents of the town, but as a select body, deriving their authority directly from the law, and acting independently. *Treat* & al. v. *Middletown*, 8 *Conn. R.* 245. *Torrington* v. *Nash* & al. 17 *Conn. R.* 199. The select-men are thus constituted the judges of the convenience and necessity of the town, subject to no appeal to the town. Where the select-men have surveyed and laid out the road, assessed the damages, and reported the survey to the town ; the *lay-out* is as complete, as when it is done by the county commissioners.

3. That there is no force in the objection, that, upon the claim of the plaintiffs in error, there is no remedy, in cases of this nature, because there is no appeal. No very great public evil can ever result, from allowing the towns to regulate their own local ways. Towns are most competent to judge of their own wants, and to decide when and how their own roads shall be constructed. *Treat* & al. v. *Middletown*, 8 *Conn. R.* 245. The convenience of the inhabitants of any town will be sufficient security against wanton neglect in regard to their own roads ; while the convenience of the inhabitants of other towns is fully secured, by the other provisions of the statute.

*Buel*, contra, insisted, 1. That the object of the statute was, to provide a tribunal, to which the public might appeal, when-

*New-Haven,*
*June, 1849.*

Wolcott
*v.*
Pond.

ever the select-men or the town refused to lay out a highway; and it was intended, that if the select-men and town, or either of them, failed to lay out the road prayed for, the public should not be remediless. *Waterbury* & al. v. *Darien*, 8 *Conn. R.* 162. *Treat* & al. v. *Middletown*, 8 *Conn. R.* 243.

2. That a highway is not *laid out,* according to the intendment of the statute, until the survey thereof is *accepted* by the town, and *recorded. Stat. p.* 340. (ed. 1838.) *Treat* & al. v. *Middletown*, 8 *Conn. R.* 243. The statute does not contemplate it as a highway, until the survey is accepted and recorded. The last paragraph of the 11th section provides, that the road shall not be opened, until the expiration of twelve months after the laying out of the highway. When does this period of twelve months begin? Does it begin when the road is laid out by the select-men? Or, when the survey is accepted and recorded?

3. That the expression "select-men," in the statutes, includes *all parties,* and the expression "lay out" includes *all measures,* necessary to establish and complete a legal highway.

4. That the object of the statute being apparent, it is to be so construed, as not to defeat the obvious design and purpose of the law. *Rawson* v. *State*, 19 *Conn. R.* 292. 299.

STORRS, J. The "Act relating to Highways and Bridges," under which the proceeding now in question took place, prescribes, in the 11th section, that the select-men of the respective towns, or the major part of them, may lay out such public or private ways, as they shall judge needful, within their respective towns, after first giving reasonable notice to the owners of the land, through which the same are to be laid out, &c.; and, after providing by whom the damages done to such persons, by the *laying-out* of the road, shall be paid, and how such damages shall be ascertained, declares, that "a survey in writing, under the hands of the select-men, containing a particular description of such way, being made, accepted by the town, and recorded in the records of lands in such town, and satisfaction being made," or provided, as therein mentioned, "to the persons damnified," such way shall be and remain for the use for which it was laid out. But that no highway, or private way, *laid out by the select-*

*men, in manner aforesaid,* through any person's enclosure, who shall declare himself aggrieved, by the *laying out* of the same, shall be laid open or occupied, until the expiration of twelve months *after the laying out* of such way, that such person may have an opportunity to apply for relief, as is hereinafter provided, and also have time to fence and secure his enclosure." In the 12th section, it further provides, that when any new highway, from one place to another within a town, " where the select-men of the town neglect or refuse to lay out the same, shall be wanting," any person, or persons, may apply to the county court within the county, where the highway is proposed to be made, for that purpose; and then prescribes the mode of proceeding on such application.

The import of the answer of the respondents, to the application now in question, which was made to the county court, under the last-mentioned provision, and which answer is found to be true, is, in substance, that the select-men had made a designation of the road applied for, adjudged it to be needful, and presented a written survey thereof to the town; but that the town refused to accept of such survey, and that no further proceedings, in regard to said road, had since taken place. The plaintiff in error insists, that on these facts, there was not such a neglect or refusal to lay out the road, as to give to the county court jurisdiction of the application thereto of the defendants in error; because such jurisdiction is conferred only in the case of the neglect or refusal of the select-men to lay it out; by which, he claims, is intended, only an omission, by that particular body, to take those steps, which the statute requires of them, as preparatory to the action of the town; and that, therefore, the neglect or refusal by the town, to follow up, on its part, the measures of the select-men in regard to the road, by such proceedings as are required, in order to constitute it a valid and complete legal highway, lays no foundation for such an application.

We cannot accede to such a narrow and ineffective construction of the 12th section of this act. By the term *laying out*, as used in that section, the legislature, in our opinion, intended, not only what was required by the act to be done, by the select-men, in the first instance, in order to appropriate land for the purpose of a highway, but all the subsequent

measures, which the law rendered necessary, on the part of the town, in order to perfect and establish it as such; not merely the preliminary steps, by the select-men, of a notice to the owners of the land, on which the highway was contemplated to be laid out, and a presentation by that board to the town of a survey thereof, which, of themselves, and without any further proceedings, would be wholly unavailing for any purpose whatever, but one which should become effective, for the purpose for which it was required—the establishment of a legal way; and it could be rendered thus effective, only by the subsequent steps prescribed in the 11th section, one of which was the acceptance, by the town, of the survey made by the select-men.

The 11th section prescribes the manner, in which highways, and private ways, shall be created; or, as is expressed in that section, "laid out," from the incipient steps, to be taken by the select-men, to the consummating acts of the town; and then provides, that, these measures being taken, the "way shall be and remain for the use for which it was laid out;" plainly using that term, to denote the result or effect of the measures, which had before been detailed, and the consequence of them, as a legally established highway. It then limits a period, within which "no highway, or private way, laid out by the select-men, *in manner aforesaid,* through any person's enclosure, who shall declare himself aggrieved, by *laying out* the same, shall be opened or occupied." The expressions, "laid out," "in manner aforesaid," clearly refer to, and embrace all the measures, which had been previously required, for the creation or establishment of the way, as well those to be taken by the town, as by the select-men; and this, notwithstanding the intervention of the words "by the select-men" between these phrases; by which words, nothing more was, in our judgment, intended, than to express the particular mode, in which the laying-out of the way originated, as contradistinguished from any other mode, independent of the action of select-men, by which it was provided, in the same statute, that ways might be established.

That this is the true sense of the language, is placed beyond a doubt, by the consideration, that the way is to be deemed a legally established way, when "laid out by the select-men, in manner aforesaid;" subject only to the limita-

New-Haven,
June, 1849.

tion as to the time when it shall be opened and used as such,
which was introduced only for the benefit of particular per-
sons, who might claim to be aggrieved.   It could not, how-
ever, by the provisions of the 11th section, be legally estab-
lished as a way, if the select-men had designed it, and pre-
sented a survey of it to the town; and no measures had been
subsequently taken by the town on the subject.   In order,
therefore, to make the expression sensible, it must be held to
mean the combined measures, of both the select-men and the
town, which had before been prescribed.

Wolcott
v.
Pond.

It is to be observed further, that it is provided, in the same
clause, that the way shall not be laid open, or occupied, in
the cases therein mentioned, "until the expiration of twelve
months, after the *laying out* of such way."   There can be no
doubt, that this means, after the way shall have been legally
established as such, by all the steps previously prescribed to be
taken, by the select-men and the town; since it would hardly
be claimed, that the period there limited, was intended to be
computed from the initiatory proceedings of the select-men;
thus shewing, that the phrsae *laying out*, was used to express
the establishment of the way, as the result of the measures
made necessary for that purpose.

One of the objects of thus limiting the time for laying
open or occupying the road, is, in the act, declared to be,
that persons aggrieved by laying out the same, may have an
opportunity to apply for relief, as therein after provided;
and by the 13th section, it is provided, that such persons,
" may, within eight months after the same is *laid out*," apply
to the county court for relief; which period also, like that of
twelve months before mentioned, undoubtedly was intended
to commence from the completion of the several measures,
which are made necessary, in order to constitute it a com-
plete legal way.

There are, also, in the same act, several other instances,
where a way is mentioned as having been *laid out*, and *laid
out* by the *select-men*, and by committees; and where pro-
vision is made, for the expenses of *laying out* ways.   With-
out quoting the particular language, or expressions, in these
instances, it may suffice to refer especially, to the subsequent
portions of the 12th section, and to the four sections next pre-
ceding; in which the manner and connection, in which these

phrases are used, shew most clearly, that they were intended to be understood in the sense, which we have imputed to that in question.

Independently, however, of this view of the point before us, we should feel constrained, on a more general ground, to give this act such a construction, as to confer jurisdiction on the county court, in all cases, where either the select-men, or the town, omit to take any of the steps, towards the establishment of a way, which are prescribed for that purpose. We cannot doubt, that the legislature, in providing for an appeal to the county court, by the 12th section, intended to furnish to the party aggrieved, the right of a review before that court, in all cases, where the appropriation of land for a highway has been improperly defeated, in consequence of an omission to exercise their powers, on the part of either of those bodies, to whom jurisdiction for this purpose is primarily given by the statute. And in construing a remedial statute of this character, having for its end the promotion of such important and beneficial public objects, we feel bound to give it a large construction, for the purpose of furthering those objects, even although the language of the statute is critically less exact than it should be ; provided we can do so, as we doubt not we can, in this case, without doing absolute violence to its terms.

It has been suggested, that it was the design of the legislature, merely to confer on the county court a supervisory power over the select-men ; but to leave the approbation of their proceedings solely to the judgment, discretion, or interest of the town ; without any right to appeal from the acts or omissions of the latter. We cannot think, that the design of the legislature was thus limited. The consequences of such a construction forbid that supposition. If that should be the construction of the statute, nothing would be easier, than to prevent a review by the county court, in any case of an application to select-men or towns, for the establishment of a highway; since it would only be necessary, to procure the former, to go through with the formality of presenting a survey to the town, with the understanding, that it should be defeated, by a disapproval, or want of action, on the part of the latter. And it is to be recollected, that the highways which are to be established by the towns, are not for their

exclusive benefit, but also for that of the public at large ; and that the towns would have, or might imagine they had, a strong pecuniary interest in defeating a highway, from which the inhabitants supposed, that they might derive a benefit, not proportioned to the expense of its construction. It is more just to conclude, that, as the coöperation of the select-men and the town is required for the establishment of a highway, relief from the want of such coöperation was intended to be furnished, no less than from the omission of the former to do their duty in the first instance.

The judgment of the superior court is, therefore, affirmed.

In this opinion the other Judges concurred.

Judgment affirmed.